
Filed
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**PETER SCOTT VonSCHIMPF,**
Defendant-Appellant.

Supreme Court Case No. CRA25-013
Superior Court Case No. CF0606-23

## OPINION

## Cite as: 2026 Guam 6

Appeal from the Superior Court of Guam
Argued and submitted on January 21, 2026
Hagåtña, Guam

Appearing for Defendant-Appellant
Leevin Taitano Camacho, *Esq.*
Camacho & Taitano LLP
101 Chalan Santo Papa, Ste. 101
Hagåtña, GU 96910

Appearing for Respondent-Appellee
Christine Santos Tenorio, *Esq.*
Assistant Attorney General
Office of the Attorney General
General Crimes Division
134 W. Soledad Ave., Ste. 301
Hagåtña, GU 96910

E-Received
7/16/2026 4:54:38 PM


BEFORE: KATHERINE A. MARAMAN, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and ROBERT J. TORRES, Associate Justice.

**CARBULLIDO, J.:**

[1]      Defendant-Appellant Peter Scott VonSchimpf appeals his convictions of attempted fourth-degree criminal sexual conduct ("CSC IV") and abuse of an incompetent. At trial, he moved to acquit for insufficient evidence on both charges, but the court found a rational jury could find the elements of the crimes beyond a reasonable doubt. After conviction, VonSchimpf asserted double jeopardy precluded him from being punished for both convictions, but the Superior Court rejected this argument and sentenced him to one year for each charge to run consecutively. On appeal, VonSchimpf renews his sufficiency and double jeopardy arguments. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[2]      M.V.S. had her son in 1998 and daughter R.P.G.P. in 2000. M.V.S. divorced her children's father and married VonSchimpf around 2017. The four lived together in a house on Guam. M.V.S. and VonSchimpf occupied the main bedroom, R.P.G.P. occupied another room, and M.V.S.'s son either slept in the living room or in the room with R.P.G.P. There was one bathroom in the main bedroom and another outside R.P.G.P.'s room. VonSchimpf has benign prostatic hypertrophy, which caused him to urinate more often. R.P.G.P. has autism, intellectual disability, and bipolar disorder, is nonverbal, and not toilet-trained. M.V.S. and her son were responsible for taking care of R.P.G.P., including feeding, bathing, and changing her. VonSchimpf fed and watched over R.P.G.P., but M.V.S. told VonSchimpf not to change her diapers.

[3]      On September 21, 2023, VonSchimpf and R.P.G.P. were home, and M.V.S. and her son were at work. At around 7:30 p.m., M.V.S. arrived home and saw VonSchimpf running naked from the waist down from R.P.G.P.'s room toward the main bedroom. M.V.S. followed VonSchimpf

into their bedroom and found him sitting in front of the television. Upon M.V.S.'s confrontation, VonSchimpf allegedly said, "This only happened once." Transcript ("Tr.") at 143 (Jury Trial, Day 1, Jan. 15, 2025). VonSchimpf then became hysterical and started praying and mumbling. M.V.S. went to R.P.G.P.'s room and discovered R.P.G.P. on the edge of her bed facing down, with her diaper and shorts pulled down to her thighs. M.V.S. smelled R.P.G.P.'s genitalia and detected the scent of the same lubricant M.V.S. and VonSchimpf had used when they had intercourse. Later that night, M.V.S. received a call from her ex-husband, and VonSchimpf allegedly told her, "Don't tell, don't tell." *Id.* at 142. At around 9:00 p.m., M.V.S.'s son returned home and found R.P.G.P. sleeping.

[4] The next morning, M.V.S. called the police. The police seized R.P.G.P.'s shirt, shorts, diaper, bed sheet, and the bottle of lubricant. M.V.S. had not changed R.P.G.P.'s diaper since the incident. The police referred M.V.S. to Healing Hearts for an exam. M.V.S. decided not to take R.P.G.P. to Healing Hearts because R.P.G.P. would not follow commands.

[5] A grand jury indicted VonSchimpf on charges of attempted CSC III, CSC IV, and abuse of an incompetent. M.V.S., her son, and law enforcement testified for the People. As R.P.G.P. is non-verbal, she did not testify. The Guam Police Department's criminalist testified about her analysis of the seized evidence. The Guam Crime Laboratory primarily tests for blood and semen but lacks the capacity to test for DNA, skin cells, or lubricant. The criminalist testified that she did not detect blood or semen on R.P.G.P.'s shirt, shorts, or diaper.

[6] VonSchimpf moved to acquit for insufficient evidence, arguing that there was no physical evidence. The Superior Court denied the motion because "there [wa]s legal and sufficient evidence for a reasonable juror to come to a conclusion in this matter" when R.P.G.P. was placed on the edge of her bed face down, was undressed, and smelled of lubricant. Tr. at 70 (Jury Trial, Day 2,

Jan. 16, 2025). The jury found VonSchimpf not guilty of attempted CSC III and CSC IV, but guilty of attempted CSC IV as a lesser included offense of CSC IV and abuse of an incompetent.

[7] In his sentencing memorandum, VonSchimpf requested that his two convictions run concurrently, not consecutively, because they "punish in effect the same offense." Record on Appeal ("RA"), tab 80 at 1–2 (Def.'s Sentencing Mem., Apr. 2, 2025). The People opposed, arguing that the Legislature intended to punish different conduct. The trial court, while recognizing it was a "very close call," sentenced him to one year for attempted CSC IV and one year for abuse of an incompetent, to run consecutively. VonSchimpf timely appealed.

## II.  JURISDICTION

[8] This court has jurisdiction over a criminal appeal from a final judgment of the Superior Court. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-100 (2026)); 7 GCA §§ 3107, 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III.  STANDARD OF REVIEW

[9] "Where a defendant has raised the issue of sufficiency of evidence by motion for acquittal in the trial court, the denial of the motion is reviewed *de novo*." *People v. Anastacio*, 2010 Guam 18 ¶ 10. "We review the record to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *People v. Bosi*, 2022 Guam 15 ¶ 11 (quoting *People v. Robert*, 2019 Guam 2 ¶ 8). "This is a 'highly deferential standard of review.'" *People v. Song*, 2021 Guam 14 ¶ 18 (quoting *People v. Wia*, 2020 Guam 17 ¶ 35). "The People 'must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.'" *Bosi*, 2022 Guam 15 ¶ 11 (quoting *People v. Song*, 2012 Guam 21 ¶ 28). "[W]hen 'faced with a record of historical facts that supports conflicting inferences' a reviewing court 'must presume—even if it does not affirmatively appear in the record—that the

trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *People v. Riosen*, 2023 Guam 23 ¶ 30 (quoting *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010)).

[10]    "An alleged double jeopardy violation is a question of law reviewed *de novo*." *People v. Castro*, 2025 Guam 9 ¶ 17. "A double jeopardy claim requires us to discern legislative intent under the applicable charging statutes, which we review *de novo*." *Riosen*, 2023 Guam 23 ¶ 17.

## IV.  ANALYSIS

[11]    On appeal, VonSchimpf argues that there was insufficient evidence for both convictions and, in the alternative, that double jeopardy bars consecutive sentences for those convictions.  But circumstantial evidence, even without corroboration of medical experts, was sufficient to establish the specific intent required to prove attempted CSC IV.  Furthermore, even if the record supported conflicting inferences, on sufficiency review we must presume—based on the guilty verdict—that the jury resolved any conflicts in favor of the prosecution.  *See Riosen*, 2023 Guam 23 ¶ 30.

[12]    We also hold that the Legislature intended CSC IV under 9 GCA § 25.30(a)(2) and abuse of an incompetent under 9 GCA § 31.40(a)(2)(C) to punish different conduct.  Each charge requires at least one element that does not overlap with the other charge.  Consecutive sentences for both convictions do not constitute double jeopardy.  We affirm.

## A. Sufficient Evidence Supports Convictions for Attempted CSC IV and Abuse of an Incompetent

[13]    The Superior Court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information or complaint . . . if the evidence is insufficient to sustain a conviction of such offense or offenses."  8 GCA § 100.10 (2005).  A guilty verdict replaces the presumption of innocence with a presumption of guilt.  *Song*, 2012 Guam 21 ¶ 28.  "Accordingly, the 'defendant bears the burden on appeal of showing that the evidence was legally insufficient to

sustain a guilty verdict.'" *Id.* (quoting *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)). "It is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *Id.* ¶ 29 (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)). "The court is concerned with the existence or nonexistence of evidence, not its weight, and this standard remains constant even when the People rely exclusively on circumstantial evidence." *Song*, 2021 Guam 14 ¶ 19 (quoting *Wia*, 2020 Guam 17 ¶ 36). "[I]f there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury." *Id.* (alteration in original) (quoting *Song*, 2012 Guam 21 ¶ 29). "[T]he government does not need to rebut all reasonable interpretations of the evidence that would establish the defendant's innocence, or 'rule out every hypothesis except that of guilt beyond a reasonable doubt' . . . ." *Riosen*, 2023 Guam 23 ¶ 31 (quoting *Nevils*, 598 F.3d at 1164). The question is not "whether a finder of fact could have construed the evidence produced at trial to support acquittal." *Id.* (quoting *Nevils*, 598 F.3d at 1164). "[I]n order for a challenge to the sufficiency of the evidence to be successful," this court "must find 'that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *People v. McKinney*, 2016 Guam 3 ¶ 17 (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). We hold that sufficient evidence supports the jury's verdict on both charges.

### 1.  Sufficient evidence supports VonSchimpf's attempted CSC IV conviction

[14]    "A person is guilty of an attempt to commit a crime when, with intent to engage in conduct which would constitute such crime were the circumstances as he believes them to be, he performs . . . an act which constitutes a substantial step toward commission of the crime." 9 GCA § 13.10 (2005). "A person is guilty of criminal sexual conduct in the fourth degree if

he . . . engages in sexual contact with another person and if . . . the actor knows or has reason to know that the victim is mentally impaired, mentally incapacitated, or physically helpless." 9 GCA § 25.30(a)(2) (as amended by Guam Pub. L. 36-101:6 (June 15, 2022)). "'Sexual Contact' includes the intentional touching of the victim's . . . intimate parts . . . , if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification." *Id.* § 25.10(a)(9) (as amended by P.L. 36-101:2 (June 15, 2022)). "[T]he element of sexual contact is met if the intentional touching 'can reasonably be construed as being for the purpose of sexual arousal or gratification,' *even if the actor did not act with the specific purpose of sexual arousal or gratification*." *People v. Denamarquez*, 2025 Guam 18 ¶ 12 (quoting *People v. Morales*, 2022 Guam 1 ¶ 75). "In determining whether actions are done for sexual arousal or gratification, the trier of fact may infer motivation based on the defendant's actions." *People v. Enriquez*, 2014 Guam 11 ¶ 28. Thus, the elements of attempted CSC IV are (1) specific intent to engage in CSC IV and (2) a substantial step towards CSC IV. To prove the mens rea for attempted CSC IV as charged in this case, the People were required to prove VonSchimpf had the specific intent to engage in sexual contact with the victim. Or, in other words, that he had the specific intent to touch the victim's intimate parts in a manner that can be construed as being for the purpose of sexual arousal or gratification.

[15]     VonSchimpf argues that "[t]he record here fails on intent," without citing any authority. *See* Appellant's Br. at 16 (Aug. 25, 2025). With no Guam case directly addressing a factual scenario where the adult victim did not testify, we turn to cases from Michigan because our CSC statutes were patterned after its. *See People v. Penaflorida*, 2022 Guam 14 ¶ 14. Michigan courts have held that undressing the victim is sufficient to infer the intent to commit CSC. *See, e.g.*, *People v. Venson*, No. 339921, 2019 WL 942310, at *7 (Mich. Ct. App. Feb. 26, 2019) (per curiam)

("[Co-defendant]'s intent that CSC-I be committed, or knowledge that defendant intended to commit CSC-I, can be inferred from his actions in assisting in removing the victim's clothing, which occurred after the two men discussed a condom and argued about who would 'go first.'"); *People v. Waters*, No. 224024, 2001 WL 793881, at *2 (Mich. Ct. App. Jan. 13, 2001) (per curiam) ("From the evidence that defendant forcibly tore complainant's denim shorts from her body, a rational trier of fact could infer that he intended to commit a sexual act involving penetration.").[1]

[16]     VonSchimpf contends that "[n]o physical evidence corroborated the charges, [and] no medical examination of the victim was conducted." Appellant's Br. at 3. However, "[t]he 'intent' element of a crime is 'rarely susceptible of direct proof and must usually be inferred from all the facts and circumstances disclosed by the evidence.'" *People v. Mateo*, 2017 Guam 22 ¶ 43 (quoting *McKinney*, 2016 Guam 3 ¶ 19). Although R.P.G.P. did not—and likely could not—testify at trial, her mother and brother did. The People offer cases finding sufficient evidence without the victim's testimony. *See* Appellee's Br. at 6 (Sep. 24, 2025) (first citing *State v. Lavigne*, 749 A.2d 83 (Conn. App. Ct. 2000) (infant victim); and then citing *State v. Allgood*, 2019-Ohio-738 (same)); *id.* at 8–9 (citing *Commonwealth v. Dula*, 262 A.3d 609 (Pa. Super. Ct. 2021) (disabled victim)). We agree that there is no categorical rule requiring a victim's testimony to sustain a conviction. Given "all the facts and circumstances disclosed by the evidence," a rational jury could infer from M.V.S.'s testimony that VonSchimpf had the specific intent to engage in sexual contact with the victim. *See Mateo*, 2017 Guam 22 ¶ 43. M.V.S. testified that she found her daughter undressed at the edge of her bed, with her diaper removed, and her intimate parts covered in what M.V.S. believed to be lube. She further testified that she saw the defendant run from her daughter's room

---

[1] "Although a majority of Michigan Court of Appeals decisions are unpublished, we rely on unpublished opinions to the extent their reasoned analysis is persuasive in the case before us." *People v. Simmons*, 2025 Guam 13 ¶ 56 n.7 (quoting *People v. Hosei*, 2023 Guam 22 ¶ 31 n.2).

in a state of undress. This is ample circumstantial evidence that would permit a jury to infer that VonSchimpf had the specific intent to touch the victim's intimate parts in a manner that can be construed as being for the purpose of sexual arousal or gratification.

[17]     VonSchimpf also argues that his prostatic hypertrophy and frequent urination "provided an alternative innocent explanation for why he may have been partially unclothed." Appellant's Br. at 16. But "the government does not need to rebut all reasonable interpretations of the evidence that would establish the defendant's innocence, or 'rule out every hypothesis except that of guilt beyond a reasonable doubt.'" *Riosen*, 2023 Guam 23 ¶ 31 (citation omitted). Even if we assumed that the record supported drawing conflicting inferences from VonSchimpf's behavior, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *See id.* ¶ 30. M.V.S. testified that VonSchimpf was sitting in front of the TV in their bedroom, partially unclothed. On sufficiency review, VonSchimpf's suggestion that he could have been partially unclothed due to his alleged medical condition does not invalidate the conflicting inferences a rational jury could have drawn from this same evidence to support a conviction. M.V.S.'s testimony as to VonSchimpf's and R.P.G.P.'s state and his demeanor afterward were sufficient for a rational juror to infer that he had the specific intent to engage in sexual contact. There is sufficient evidence from which a rational jury could infer that VonSchimpf had the intent to touch R.P.G.P.'s genital area in a manner that can reasonably be construed as for the purpose of sexual arousal or gratification. Thus, sufficient evidence supports the attempted CSC IV charge.

### 2. Sufficient evidence supports VonSchimpf's abuse of an incompetent conviction

[18]     VonSchimpf was also convicted of abuse of an incompetent for unreasonably endangering the physical or emotional health of an incompetent in his "care of custody" or control. *See* RA, tab 32 at 2 (Superseding Indictment, Feb 22, 2024); RA, tab 76 (Verdict Form 4, Jan. 17, 2025);

RA, tab 77 at 6D (Jury Instrs., Jan. 17, 2025); RA, tab 82 at 2 (Judgment, Apr. 10, 2025). VonSchimpf argues that "the abuse count was entirely derivative of the alleged sexual act." Appellant's Br. at 17. The People point to independent evidence that he endangered R.P.G.P.'s emotional health by exposing his penis, putting her in a compromising position, and pulling down her diaper. Appellee's Br. at 9. We conclude this evidence was sufficient to support VonSchimpf's abuse of an incompetent conviction, regardless of whether it was derivative of or independent from the CSC charge.

[19]    Whether proof of sexual conduct is sufficient to establish endangerment of the victim's physical or emotional health invites discussion of broader abuse jurisprudence. Guam's child abuse and abuse of an incompetent statutes are identical except for the status of people they protect—one protects children and the other protects incompetent people. The abuse of an incompetent statute provides:

> (a) A person is guilty of *abuse of an incompetent* when:
>
>> (1) he subjects an incompetent to cruel mistreatment; or
>>
>> (2) having an incompetent in his care of custody or under his control, he:
>>
>>> (A)  deserts that incompetent with intent to abandon him;
>>>
>>> (B)  subjects that incompetent to cruel mistreatment; or
>>>
>>> (C)  unreasonably causes or permits the physical or emotional health of that incompetent to be endangered.

9 GCA § 31.40(a) (2005). The only difference in the child abuse statute is exchanging the words "abuse of an incompetent" for "child abuse" and "incompetent" for "child." Thus, both child abuse and abuse of an incompetent can be proved by showing "cruel mistreatment."

[20]    In *People v. Wusstig*, 2015 Guam 21 ¶ 14, we observed that the People's proof of CSC charges "would arguably suffice to establish" the "cruel mistreatment" element of child abuse on

its own. There, based mostly on the victim's testimony and despite extensive cross-examination about her motive to lie and her inability to describe physical characteristics of the defendant's genitalia, we found sufficient evidence to support both the CSC and abuse convictions. *Wusstig*, 2015 Guam 21 ¶¶ 15–18, 25–27.

[21]     Examination of the sources of Guam's abuse statutes suggests the rationale that proof of CSC charges "arguably" suffice to establish cruel mistreatment should extend to establish endangerment of the victim's physical or emotional health. Annotations and comments, though not substantive Guam law, 1 GCA § 101(a) (2005), are still useful for discerning the intent of the law review commission "and thus serve as valuable quasi-legislative history," *People v. Taisacan*, 2023 Guam 19 ¶ 54 & n.15. Title 9 GCA § 31.30(a) mirrors section 980(a) of the 1971 draft of the California Penal Code. *See* 9 GCA § 31.30, SOURCE. *Compare* Cal. Penal Code Revision Project ("CPCRP") § 980 (1971), *with* 9 GCA § 31.30. The comment to CPCRP § 980 explains the reasoning underlying the repetition of the "cruel mistreatment" language under (a)(1) and (a)(2)(B):

> The extent of liability under this section depends on the relationship of the defendant to the child and the degree of risk to the child. *Any person* who subjects a child to cruel mistreatment is guilty of a crime. Persons who have care, custody, or control of a child are held to a higher standard of care. In addition to the obvious crimes of desertion or cruel mistreatment, they may not unreasonably cause or permit the child to be endangered.

CPCRP § 980 cmt. In other words, because custodians are held to a higher standard of care, proof of poor treatment that falls short of "cruel mistreatment" will suffice to sustain a conviction if it unreasonably endangers physical or emotional health of the victim. Cruel mistreatment is therefore a higher bar than endangerment. Thus, if evidence sufficient to support CSC is "arguably" proof of cruel mistreatment, it is sufficient to support the endangerment of physical or

emotional health element under 9 GCA § 31.40(a)(2)(C). *See Wusstig*, 2015 Guam 21 ¶ 14. Sufficient evidence supports both convictions.

## B. Consecutive Sentences for Attempted CSC IV and Abuse of an Incompetent Do Not Violate Double Jeopardy

[22]     At sentencing, VonSchimpf argued that the double jeopardy statutes prohibited punishing him twice for what was "in effect the same offense." RA, tab 80 at 1–2 (Def.'s Sentencing Mem.) (citing 9 GCA § 1.22(d) (2005)). He renews this argument on appeal, contending that consecutive sentences for attempted CSC IV and abuse of an incompetent constitute double jeopardy under Guam's double jeopardy statutes. Appellant's Reply Br. at 8–14 (Oct. 8, 2025). He argues that under section 1.22(d), CSC IV and abuse of an incompetent differ only in that the former prohibits conduct generally while the other prohibits a specific instance of that same conduct. Alternatively, he argues that abuse of an incompetent is an included offense of CSC IV under the "same or less facts" test. We conclude that CSC IV and abuse of an incompetent are not general/specific counterparts of one another; nor is abuse of an incompetent an included offense of CSC IV.

[23]     "Both the Double Jeopardy Clause of the U.S. Constitution and the Organic Act Bill of Rights prevent a person from being 'subject for the same offence to be twice put in jeopardy of life or limb.'" *People v. Vargas*, 2026 Guam 1 ¶ 20 (quoting U.S. Const. amend. V) (citing 48 U.S.C.A. § 1421b(d), (u)). There are two approaches to double jeopardy: "One approach is to determine whether both charges arose from the 'same conduct' by the defendant. The other approach is to determine whether both offenses require proof of the 'same elements.'" Erwin Chemerinsky & Laurie L. Levenson, *Criminal Procedure: Adjudication*, at 466 (2022) (ebook). Since *Blockburger v. United States*, 284 U.S. 299 (1932), federal courts have mostly adhered to the "same elements" test. Chemerinsky & Levenson, *supra*, at 466. The U.S. Supreme Court adopted the "same conduct" test in *Grady v. Corbin*, 495 U.S. 508 (1990), but the Court in *United*

*States v. Dixon*, 509 U.S. 688 (1993), returned to the *Blockburger* "same elements" test. Chemerinsky & Levenson, *supra*, at 467.

[24]    The double jeopardy analysis in Guam encompasses both the "same elements" and "same conduct" approaches. *See Castro*, 2025 Guam 9 ¶ 43. "The Legislature has codified the prohibition against double jeopardy by statute," *Vargas*, 2026 Guam 1 ¶ 21, which "arguably" sets forth broader protections than the floor set by the Fifth Amendment, *see People v. Quinata*, 2010 Guam 17 ¶ 41 n.6.

> When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
>
>> (a) one offense is included in the other as defined in § 105.58 of the Criminal Procedure Code;
>>
>> . . . ;
>>
>> (d) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct . . . .

9 GCA § 1.22. VonSchimpf's consecutive sentences for attempted CSC IV and abuse of an incompetent do not constitute double jeopardy under either test.

### 1. CSC IV and abuse of an incompetent under 9 GCA § 31.40(a)(2) are not general/specific counterparts under 9 GCA § 1.22(d)

[25]    VonSchimpf argues that the CSC IV and abuse of an incompetent "statutes address the same conduct." Reply Br. at 8. The People maintain that the Legislature intended them to punish different conduct. *See* Appellee's Br. at 11–14. "In determining whether two statutes are general/specific counterparts of one another, the court's focus lies on whether the two statutes 'seek to redress the same conduct.'" *People v. Palisoc*, 2002 Guam 9 ¶ 44 (quoting *State v. Richie*, 960 P.2d 1227, 1242 (Haw. 1998)). We consider whether "language, history, or purpose to suggest that

they were merely variant formulations of the same wrong designed to afford prosecutors alternative approaches or to reach different classes of offenders." *People v. Diaz*, 2007 Guam 3 ¶ 58 (quoting *United States v. Cedar*, 437 F.2d 1033, 1036 (9th Cir. 1971) (per curiam)). Moreover, "[w]e examine the entire statutory scheme for guidance." *People v. Walliby*, 2024 Guam 13 ¶ 12.

[26]    Guam's CSC statutes were patterned after Michigan's, *Penaflorida*, 2022 Guam 14 ¶ 14, while abuse of an incompetent was adopted mainly from proposed revisions to the California Penal Code, 9 GCA § 31.40, SOURCE. California's current abuse statutes differ from the 1971 proposed revision on which the Guam statute was based. *Contrast* CPCRP § 984, *with* Cal. Penal Code § 368. Legislative history and application of *People v. Palisoc*, 2002 Guam 9, reveal that CSC IV and abuse of an incompetent under 9 GCA § 31.40(a)(2)(C) are not general/specific counterparts under subsection 9 GCA § 1.22(d).

[27]    The CSC IV statute was last amended in 2022. 9 GCA § 25.30, SOURCE. The Legislature explained that "common law has long prohibited intercourse with victims whose permanent or temporary physical conditions preclude them from consenting to sexual activity." Guam Pub. L. 36-101:1. The Legislature revised "mentally defective" to "mentally impaired" and expanded the definition of "mental incapacitation" and physical helplessness. *See id.* The People are correct that 9 GCA § 25.30 is meant to regulate nonconsensual sexual contact. *See* Appellee's Br. at 11–14.

[28]    But the abuse of an incompetent statute was designed to punish different conduct. Title 9 GCA § 31.40 cites four sources: Guam Penal Code § 361, Model Penal Code ("MPC") § 230.5, CPCRP § 984, and New Jersey Statutes Annotated § 2C:24-5. 9 GCA § 31.40, SOURCE. Section 31.40 is nearly identical to CPCRP § 984, which explains that it "extends the same protection to incompetents that Section 980 provides for children." CPCRP § 984 cmt. The mirrored language

between the proposed California abuse statutes is consistent with the parallelism between child abuse under 9 GCA § 31.30 and abuse of an incompetent under section 31.40. Former Guam Penal Code § 361 provided that "[e]very person guilty of any harsh, cruel, or unkind treatment of, or any neglect of duty towards any idiot, lunatic, or insane person is guilty of a misdemeanor." Guam Penal Code § 361 (1970). This corresponds to the "cruel mistreatment" language of 9 GCA § 31.40(a)(1) and (a)(2)(B). MPC § 230.5 and New Jersey Statutes Annotated § 2C:24-5 provide that a person is criminally liable if he "fails to provide support which he can provide and which he knows he is legally obliged to provide to a spouse, child or other dependent." This reflects the "care of custody" under 9 GCA § 31.40(a)(2). A review of this legislative history shows no indication that the abuse of an incompetent statute was adopted by the Legislature with sexual abuse in mind. VonSchimpf was charged with violating 9 GCA § 31.40(a)(2), designed to address breach of duty of care owed to incompetent dependents. One way to breach this duty is to endanger the incompetent's physical or emotional health, which includes attempted sexual contact. However, the legislative history around 9 GCA § 31.40 reveals nothing targeting sexual acts in particular.

[29] In *Palisoc*, 2002 Guam 9 ¶ 45, we held that "[t]he focus of the criminal mischief statute is to punish the damaging of another's *motor vehicle*. In contrast, the focus of the arson statute is limited to punishing damage caused by *fire or explosion*." Since the focus of the criminal mischief statute differed from that of the arson statute, the two were not general/specific counterparts of one another. *Id.* The possibility of an overlap—the burning of a motor vehicle—did not affect this court's conclusion that the focus of those statutes differed. Even if CSC IV against a mentally impaired person and abuse of an incompetent might concern the same victim, the "care of custody" language of 9 GCA § 31.40(a)(2) evinces that the Legislature intended to address different conduct

than CSC IV. The CSC statute and the abuse of the incompetent statute do not punish the same conduct.

### 2. Under 9 GCA § 1.22(a), abuse of an incompetent under 9 GCA § 31.40(a)(2) is not an included offense of attempted CSC IV

[30] VonSchimpf argues, "Alternatively, under 9 GCA § 1.22(a), Abuse of an Incompetent is an included offense because it 'is established by proof of the same or less than all the facts required to establish' the CSC charge." Appellant's Br. at 21. The People argue that "the proof needed for each distinct crime is different." Appellee's Br. at 16.

[31] In *Palisoc*, we established the analysis when a defendant argues 9 GCA § 1.22(a) prohibits double punishment because one offense is an included offense of the other under the "same or less facts" test of 8 GCA § 105.58(b)(1). "[W]hether a court can punish a defendant under two distinct statutory provisions for offenses arising out of a single act or transaction is a two step analysis." 2002 Guam 9 ¶ 36. "First, the court must look to the legislative branch to determine whether multiple punishments are authorized." *Id.* "The court must then take the second step in its analysis and employ *Blockburger* to determine whether the two statutes in effect punish the same offense." *Id.*

[32] "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* (quoting *Blockburger*, 284 U.S. at 304); *see also* 8 GCA § 105.58(b)(1) (2005) ("An offense is included . . . when . . . [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged."). VonSchimpf argues that the sexual contact element for attempted CSC IV, if met, would establish the endangerment element for his abuse of an incompetent charge. Appellant's Br. at 21–22.

**[33]** Attempted CSC IV requires specific intent and a substantial step toward sexual contact with another person knowing of the victim's mental impairment. Abuse of an incompetent under 9 GCA § 31.40(a)(2)(C) requires care of custody or control over the victim and unreasonable endangerment of the victim's physical or emotional health. The specific intent and knowledge of impairment elements are unique to the attempted CSC IV charge, and the care of custody element is unique to the abuse of an incompetent charge. Thus, abuse of an incompetent under 9 GCA § 31.40(a)(2) is not an included offense of attempted CSC IV. In sum, VonSchimpf's double jeopardy claim fails under both 9 GCA § 1.22(a) and (d).

### V. CONCLUSION

**[34]** The evidence was sufficient to support VonSchimpf's attempted CSC IV and abuse of an incompetent convictions. Consecutive sentences for both convictions do not constitute double jeopardy. Therefore, we **AFFIRM**.

|  |  |
|:---:|:---:|
| /s/ | /s/ |
| F. PHILIP CARBULLIDO | ROBERT J. TORRES |
| Associate Justice | Associate Justice |

/s/
KATHERINE A. MARAMAN
Chief Justice